EJECTMENT.     **Sidwell *et al. vs.* Worthington's Heirs.**

[Mr. Owsley for plaintiffs: Messrs. Morehead & Brown for defendants.]

FROM THE CIRCUIT COURT FOR MASON COUNTY.

*April 25.*     Chief Justice ROBERTSON delivered the Opinion of the Court.

As a pltf. in eject. may retain and control the declaration as he pleases until it is filed in court—there is no *lis pendens* until it is filed, with proof of previous service. But—

THIS is an action of ejectment, in which Worthington's heirs, who were lessors, recovered a judgment against Anne Sidwell and others, who were made defendants, in May, 1832, in lieu of Mary Foley, their tenant in possession, who had been served with a copy of the declaration and notice, in February, 1831.

If the declaration, with proof of service indorsed, is filed *upon the appearance day,* the action will, by relation, be considered as having been commenced at the time of the service. But—

The declaration and notice, with the service endorsed thereon, were filed in the clerk's office on the 9th of May, 1831, a few days only before the commencement of the May term of the Mason Circuit Court, on the first day of which the tenant had been required to appear. During that term, b⬤t on the first day thereof, the service of the notice was suggested on the order book of the Court, and a common order was directed, against Anne Sidwell, therein described as *tertenant.*

If the dec'n is not filed on the appearance day, there will be no *lis pendens* until a deft. appears, *and defends* or confesses judg't; & the action may be discontinued at any time, on motion of any person who is admitted a deft. & makes such a motion, without pleading.

The record does not show that this order had ever been executed; but it shows that, during the May term, 1832, Anne Sidwell, Mahlon Sidwell, and William Sidwell, were, on their motion, admitted as defendants, in lieu of their tenant, Mary Foley, and of the casual ejector, and thereupon, confessed lease, entry and ouster, and pleaded the general issue.

Where a dec'n in eject. is not filed in court until *after* the appearance day, if a party appears, and enters himself a deft. and instead of moving a discontinuance of the action, pleads to it—he waives

Nathan Sidwell, the deceased husband of Anne Sidwell, and father of the other two defendants, had been actually possessed of a portion of the land in contest, by residence and enclosure, and perhaps of the whole of it by construction of law, ever since some time in the winter of the year 1812; and that possession had been continued to the time of the trial of this ejectment; and was taken and held adversely to the elder legal title of the lessors.

If the action should be considered as having been

commenced when the notice was served on Mary Foley, as tenant in possession, or when the service thereof was noticed on the record of the Court, the limitation of twenty years would not operate as a bar; but if, under the circumstances of the case, the entry of Anne Sidwell and others as defendants should be deemed the commencement of the action—as twenty full years had then run—the defendants were protected by the statute of limitations of twenty years.

The first question to be considered, therefore, is—when was the suit commenced?

As a declaration in ejectment is considered to be in the possession and under the control of the plaintiff until it is filed in Court, there is, in judgment of law, no *lis pendens* until there shall have been such a filing, together with proof of previous service. But if, after sufficient service, the declaration and notice shall have been filed in Court on the return day—towit, the first day of the appearance term, the action will, by relation, be considered as having been commenced when the notice was served.

If, however, there shall have been no such filing on the first day of the appearance term, there will be no *lis pendens* until an appearance and defence to the action, or a confession of judgment, and the suit may be discontinued on motion of any person who shall appear at any time, be made a defendant, and make such motion before pleading to the action. *Fry et al.* vs. *Smith et al.* 2 *Dana*, 40.

The counsel for the plaintiffs in error, (who were defendants below,) therefore insists, that the notice had been discontinued before the appearance in May, 1832, and that, consequently, the action should not be considered as having been commenced until that time.

But we are inclined to a different conclusion. The entry on the order book, during the May term, 1831, recognized the filing of the declaration and of the notice, with the proof of service thereon; and had the common order, which was thereupon made, been duly returned executed, and had the plaintiffs in error, in con-

that the heirship had not been proved, was not a sufficient reason for rejecting the record.

Spring Term
1839.

Sidwell et al.
vs
Worthington's
Heirs.

all objection to the service, & all advantage that might have been taken of the failure to file the dec'n regularly; and the action will be considered as having been commenced at the time of service of the dec'n, and notice upon the tenant.

When a non-resident's answer appears in the record of a chancery suit, it must be presumed that there was an appearance by him, tho' he was not served with process, constructively or otherwise.

Where a record states that the court was satisfied by proof, that an order for the appearance of a non-resident, had been legally published, the decree cannot be deemed *void* as to him—tho', if the proof of publication is not in the record, the decree may be erroneous.

The various facts of a case may be proved in the order that the party thinks most eligible: so, where a record was offered as one link in a chain of title, & proof that one of the parties to the record was the heir of a certain person, was essential to its sufficiency—the fact

Spring Term
1839.
*Sidwell et al.*
vs
*Worthington's
Heirs.*

sequence thereof, appeared and made themselves defendants, and pleaded the general issue, it does seem to us that they would thereby have recognized the validity of the service on themselves, and on their tenant also, and have waived all advantage which might otherwise have been taken of the failure to file the declaration on the first day of the appearance term. And if this conclusion be right, we would be of the opinion that, the commencement of the suit should be dated from the time when the notice was first served on the tenant. If (in the language of our predecessors in the case of *Taylor* vs. *Taylor*, 3 *Marshall*, 20,) "the entry of the suit in "Court recognizes the service of the declaration and "notice," it seems to us that, *a fortiori*, an appearance and plea of not guilty should be deemed a recognition of the pendency of the action, and should be considered as having been prompted by the service of notice.

Now, though this record does not show that the common order was executed, and though, also, no judgment by default could regularly have been rendered, and the plaintiffs in error might, before they pleaded the general issue, have been entitled to a judgment of discontinuance, had they chosen to ask it—yet, as they elected to waive all objection to the regularity of the proceedings, and to defend the action as being regularly and effectually in Court, we feel authorized to conclude that the service on the tenant, which, as must be presumed, brought them into Court, should be deemed the commencement of that action, and that, by relation, it should now have the effect of a *lis pendens* from the time of the service on the tenant, Mary Foley.

The next and only other question we shall consider, is, whether the Circuit Court erred to the prejudice of the plaintiffs in error, in rejecting evidence offered by them on the trial.

They claim title under Hughes, who claimed under Orr, who claimed under Daniel. Russell, who claimed under Dr. Evans, the junior grantee of the land in contest. And, for the purpose of proving a continuous documentary title from the Commonwealth, so as to shield their possession by the limitation of seven years—

they read the record of a suit in chancery, brought by
Hughes, against Evans, Orr, and one John M. Russel,
as the heir of the said Daniel Russel, for a conveyance
of the legal title to the land, and in which Hughes had
obtained a final decree for the title; and they also proved
that Nathan Sidwell had bought the land from Hughes,
and held his bond for a title, executed in November,
1811, before the said Nathan took possession of the
land.

But the Circuit Court rejected the said record as evi-
dence against Evans and J. M. Russel, and thereby
broke two of the links of documentary title, so as to
defeat the claim to protection by actual settlement and
residence for more than seven years.

In this, we think the Circuit Judge erred. Though
the record does not show that there had been any con-
structive notice to Russel, who was sued as a nonresi-
dent, yet it does show that his answer was filed; and,
nothing appearing to the contrary, we must therefore
presume that there was, of course, an appearance by
him; and consequently, the decree is evidence against
him.

As to Evans, the record states that the Court had
been satisfied by sufficient proof, that an order of publi-
cation against him had been duly published according
to law. Although, as has been decided, the decree as
to Evans may be deemed erroneous, on the ground that
the record does not exhibit *the evidence* of publication,
and thus show that it was legal and sufficient, yet the
decree is not therefore void as to him, because the re-
cord shows the fact that there was some evidence of
publication deemed sufficient by the Circuit Judge; and
we will not now *presume* that there was no regular pub-
lication.

And therefore, there having been no reversal of the
decree, it was evidence against Evans, as well as Rus-
sell.

It is true that there had been no proof that John M.
Russell was the heir of Daniel Russell. And such proof
would certainly have been indispensable to show that
the decree had operated on the title of Daniel Russell.

Spring Term
1839.

*Ray &c.*
vs
*Lawrence &c.*

But the decision of the Judge precluded the plaintiffs in error from proof of that fact, because it was altogether irrelevant after the decision as to the effect of the decree; and it is clear to us that, that decision was not authorized by the simple fact that John M. Russell's alleged heirship had not been previously proved. The Court ought not to have rejected one of two essential and concurrent facts, each apparently relevant, merely because the other had not been first proved. The plaintiffs had a right to prove either of them first, and each in the order preferred by themselves. And unless, therefore, they had admitted that they could not prove the alleged heirship of J. M. Russell, the Court had no right to reject the record as evidence against Russell and Evans. And indeed, from the manner of the rejection itself, we infer that the only reason for it was, that, in the opinion of the Judge, neither Evans nor J. M. Russell was a party.

Wherefore, on this last ground, the judgment is reversed, and the cause remanded for a new trial.