## Ripley, et al. v. Von Zedtwitz, et al.

(Decided December 4, 1923.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Aliens—Rights as to Taking Real Property by Descent Stated.—At common law an alien cannot take by descent, and, if all the heirs of the testator are aliens, the title escheats to the state without office found; but, if there are other heirs capable of inheriting, the title vests in them.

2. Aliens—Rights of Aliens as to Taking Real Estate by Grant, Deed or Will Stated.—At common law a nonresident alien, whether alien friend or enemy, may take real estate by grant, deed or will, and may hold against all the world except the state, and may hold even as against the state until office found or other equivalent act.

3. Aliens—Statutes as to Property Rights Held Not to Change Common Law, Except Where Inconsistent.—Kentucky Statutes, sections 332-339, relating to holding of real estate by aliens, were not intended to embrace all the law on the rights of aliens to take and hold real estate, and make no changes in the common law, except where inconsistent with or repugnant thereto.

4. Aliens—Statute Held to Confer Right in Alien to Hold Real Property Devised for Eight Years.—Kentucky Statutes, section 338, not only confirms the right of any nonresident alien to take real estate by devise, but confers the additional right to hold the property for a period of eight years even as against the state, a right which did not exist under the common law, in view of section 339.

5.  Aliens—Property Devised to Alien Does Not Pass to Testator's
    Next of Kin After Eight Years.—Where real estate is devised to a
    nonresident alien, who did not dispose of it within eight years,
    under Kentucky Statutes, section 338, the land did not then pass
    to the testator's next of kin capable of inheriting, but the common
    law was in force, and only the state could question the right of the
    alien to hold the property.

MATT O'DOHERTY, MORTON K. YONTS, JAMES P. GREGORY, C. C. CALHOUN and CARLIN, HALL & CARLIN for appellants.

HUMPHREY, CRAWFORD & MIDDLETON and STEWART & SHEARER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In the year 1895, Mary E. B. Caldwell, an American citizen, married Baron Von Zedtwitz, a citizen and resident of Prussia. They had only one child, Waldemar Conrad Von Zedwitz, who was born in Berlin on May 8, 1896. At the time of his birth, and for a short time thereafter, his father lived in Prussia. In the year 1908, and after the death of his father, Waldemar and his mother, it is alleged, became naturalized citizens of Switzerland. His mother, Mary Caldwell Von Zedwitz, died in the year 1910, the owner of some very valuable real estate located in Jefferson county, Kentucky. By her will, which was probated in Jefferson county, she devised the foregoing real estate to the United States Trust Company of New York and Henry Cachard to be held in trust for her son, Waldemar, upon certain terms and conditions not material to this controversy. During the World War Waldemar was a soldier in the German army and was engaged in carrying on war against the United States.

In the month of February, 1922, this suit was brought by Garnett D. Ripley and others to recover the property. The right of recovery is based on the assumption that the title to the property had vested in plaintiffs as the next of kin of the testatrix for the reason that Waldemar, being a nonresident alien, could not take real property, or taking, could not hold for a longer period than eight years next after the final settlement of the estate of the testatrix, and that that period had long since expired.

The common law principles governing the taking and holding of real property by aliens may be summarized as follows:

1. (a) An alien cannot take by descent. (b) If all the heirs of the intestate are aliens, the title escheats to the state without office found. (c) If there are other heirs capable of inheriting, the title vests in them.

2. (a) A nonresident alien may take by act of the parties, that is, by grant, deed or will. (b) He may hold against all the world except the state. (c) He may hold even as against the state until office found or other equivalent act. (d) In this regard no distinction is made between alien friends and alien enemies.

Fairfax v. Hunter, 7 Cranch. 603 (U. S.); Yeaker v. Yeaker, 4 Met. 33, 81 Am. Dec. 530; White v. White, 2 Met. 185; Trimble v. Harrison, 1 B. Mon. 140; Fry v. Smith, 2 Dana 38; Stevenson v. Dunlap, 7 T. B. Mon. 134; Elmendorf v. Carmichael, 3 Litt. 472, 14 Am. Dec. 86; Louisville v. Gray, 1 Litt. 146; Hunt v. Warnicke, Hard. 66; Crutcher v. Hord, 4 Bush 360; 2 Bl. Com. 249; 2 Kent. Com. 560; Jackson v. Green, 7 Wend. 335; Orr v. Hodgson, 17 U. S., 4 Wheat. 453, 4 L. Ed. 613:

Particularly pertinent is the following excerpt from the opinion in Vaux v. Nesbit, 6 S. C. Eq. 352, 381:

"It is contended, however, that whatever may be the English law upon the subject, it is incompatible with the principles of our government, that an alien devisee should take by purchase, when there is a more remote relation who can take as heir. If that question were now for the first time to be considered in this country, the argument might perhaps have been entitled to great consideration. But in the case of Sheaffe v. O'Neil, 1 Mass. 256, it is held, that an alien cannot only take and hold, but that he may convey. In the case of Fairfax v. Hunter, 7 Cranch. (U. S.) 603, 3 L. Ed. 453, it is held that an alien devisee may take and hold until office found, although there was a nephew who might have taken as heir. That is a case of high authority, for it is supported by the unanimous opinion of all the judges of the Supreme Court of the United States who were then present. Judge Johnson differed in opinion with the court on another ground. But with regard to that question he expresses his unequivocal approbation of the opinion of his brethren. There are other cases in which the same principle has been recognized. This court therefore does not feel authorized to introduce the innovation which has been contended for."

But it is insisted that the common law rule that a nonresident alien may take and hold real estate against

every one except the state has been changed by the act of April 29, 1892, now chapter 19, and embracing sections 332 to 339 inclusive of the Kentucky Statutes. Section 332 declares who shall be citizens of the Commonwealth. Section 333 declares how expatriation may be effected. The remaining sections deal with the rights of aliens and are as follows:

"Section 334. An alien, not being an enemy, shall, after he has declared his intention to become a citizen of the United States, according to the forms required by law, be enabled to recover, inherit, hold and pass by descent, devise or otherwise, any interest in real or personal property, in the same manner as if he were a citizen of this Commonwealth.

"Section 335. Any alien who shall have purchased, or contracted to purchase, any real estate, or who shall hold or have title thereto, and who shall become a citizen of the United States before the same is escheated by a proper procedure, which may be done at any time after the expiration of eight years from the time the title is acquired; and any purchaser, lessee, heir or devisee, from him, if a citizen of the United States, who shall, before the property is escheated, become the owner thereof by purchase or inheritance, shall take and hold the same free and released from any right or claim of the Commonwealth by reason of such person's having been an alien.

"Section 336. Any woman whose husband is or shall be a citizen of the United States, and any person whose father or mother, at the time of his birth, was or shall be a citizen thereof, although born out of the United States, may take and hold real or personal estate by devise, purchase, descent or distribution.

"Section 337. An alien, the subject or citizen of a friendly state, may take and hold any personal property, except chattels real; and any such alien, if he resides within this state, may take and hold any lands for the purpose of residence, or of occupation by him or his servants, or for the purpose of any business, trade or manufacture, for a term not exceeding twenty-one years. An alien so taking and holding shall have like rights, remedies and exemptions touching such property as if he were a citizen of the United States.

"Section 338. If real estate within this Commonwealth shall pass to o nonresident alien by descent or devise, the same may, for the period of eight years next

after the final settlement of the estate of the decedent from whom it was acquired, be held and alienated by such nonresident alien. If the heir or devisee aforesaid be a minor, the real estate aforesaid may be held for his benefit by a guardian or curator, and may be sold by proper proceeding had in conformity with the laws regulating sales of infants' real estate, if commenced within the period first above specified.

"Section 339. If a nonresident alien hath obtained possession of real estate acquired by descent or devise, and shall die before the expiration of the period limiting his right of enjoyment or sale, the right thus acquired shall pass by descent or devise; if to an alien, to be held for or disposed of within the period aforenamed; but if to a citizen of the United States, then such person shall take the title as fully as if the ancestor had himself been a citizen."

Is is argued that the foregoing sections contain all the law on the subject of aliens and their rights to take, hold and transfer real estate in Kentucky; that the only aliens authorized by the statute to take and hold real estate are (1) an alien not an enemy who has declared his intention to become a citizen; (2) an alien who shall have purchased or contracted to purchase land or who shall hold or have title thereto, and who shall become a citizen of the United States; (3) any woman whose husband is, or shall be, a citizen of the United States, or any person whose father or mother at the time of his birth was or shall be a citizen of the United States; (4) a resident alien who is a subject or citizen of a friendly power. The point is then made that section 338 confers the power to take only on those aliens authorized by the other sections to take, that appellee does not fall within any of those classes and therefore cannot take.

An analysis of the foregoing sections will show that each section is complete and independent and deals with a particular situation not referred to or covered by any other section. Not only so, but we find nothing in the act, considered as a whole, that justifies the conclusion that it was intended to embrace all the law on the rights of aliens to take and hold real estate. On the contrary, it recognizes certain rights as already existing, and in some instances adds to those rights. In other words, it is an enabling act and not a disabling act, and should not be held to make any changes in the common law except to the

extent that it is inconsistent with or repugnant thereto. Taking up section 338, under which it is claimed appellees' case falls, we find that it contains no language indicating any intention on the part of the legislature to take away from a nonresident devisee the common law right to take. On the contrary, it permits him to hold and alienate, for a period of eight years next after the final settlement of the estate of the decedent from whom it was *acquired*, real estate which has *passed* to him by descent or devise. In other words, it deals with the holding and alienation of property that has *passed* and been *acquired*. To say that one can not take real estate which has passed to and been acquired by him, and which he is authorized to hold, seems to us a contradiction in terms. This view is confirmed by section 339, which provides for the devolution of real property *acquired* by a nonresident alien by descent or devise, where he dies before the expiration of the period limiting his right of enjoyment or sale. Therefore, it seems to us that section 338 not only confirms the right of a nonresident alien to take real estate by devise, but confers the additional right to hold the property for a period of eight years even as against the state, a right which did not exist at common law. This construction of section 338 and the other sections of the statute finds support in 2 Cyc. 98, where the statute is analyzed as follows:

"In the case of an alien not an enemy, and who has declared his intention to become a citizen of the United States, all disability is removed; resident alien may take and hold for actual residence, occupation or business for twenty-one years; nonresident alien may take by descent or devise, but must alienate within eight years, and within that period he may transmit title to it by descent or devise." Barbour & C. Stat. Ky. (1894), sections 334, 337, 338, 339.

But it is said that even though a nonresident alien may take, he may only hold for a period of eight years, and that period having expired, the title has vested in appellants. In view of the conclusion of the court, it is unnecessary to inquire whether the property in question, which is held under an active trust, is subject to escheat, or whether the time of holding has, as a matter of fact, expired. For the purposes of this case we shall assume, without deciding, the affirmative of both propositions.

The only question to be determined, then, is whether appellants have any right to the property. Section 338 contains no language that provides expressly, or by necessary implication, or even inferentially, that real property, which has been held by a nonresident alien devisee for more than eight years, shall pass to the testator's next of kin who are capable of inheriting, but leaves the common law rule in force, and under that rule only the state may question the right of an alien to hold real property. Yeaker v. Yeaker, 4 Met. 33 does not announce a contrary rule. In that case the facts were these: Peter Yeaker, who owned land in Woodford county, died intestate, a resident and citizen of that county. He left a widow, but no children, and all of his kindred were aliens and residents of Switzerland. There was a contest between the widow and the alien heirs over the ownership of the land. There was in force at the time a treaty between the United States and Switzerland which gave to citizens of Switzerland a term of not less than three years in which to dispose of real property located in this country and collect and withdraw the proceeds, but that period had expired when the alien heirs asserted their rights. Under the statute then in force, the widow took the entire real estate in the absence of other heirs capable of inheriting. The court held that, under the law of Kentucky, the alien heirs could not take by descent, and that this law, though suspended by the treaty for a period of three years, became operative at the end of that time, and that the widow was entitled to the whole of the estate. It will thus be seen that that was a case of taking by descent and not by devise, and that the court gave effect to the common law rule that where property passes by descent to heirs who cannot take because of their alienage, the title vests in the next of kin who are capable of inheriting. Ahrens v. Ahrens, 144 Ia. 286, 123 N. W. 164, and Pearson v. Lawler, 100 Neb, 783, 161 N. W. 419, the other cases relied on by appellants, are also cases of inheritance and not of devise, and do not support the position that upon the expiration of the period during which a nonresident alien devisee may hold real estate, the title vests in the next of kin who are capable of inheriting.

It follows that appellants did not show themselves entitled to the property, and that the demurrer to the petition as amended was properly sustained.

Judgment affirmed. Whole court sitting.